**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| **CAROLINE HENRICH** | : | |
| **Avondale, PA 19311** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.** |
| **v.** | : | |
| | : | |
| **HENKELS & MCCOY, INC.** | : | **JURY TRIAL DEMANDED** |
| **985 Jolly Road** | : | |
| **Blue Bell, PA 19422** | : | |
| | : | |
| **and** | : | |
| | : | |
| **HENKELS & MCCOY GROUP, INC.** | : | |
| **985 Jolly Road** | : | |
| **Blue Bell, PA 19422** | : | |
| | : | |
| **and** | : | |
| | : | |
| **H&M SHARED SERVICES, INC.** | : | |
| **985 Jolly Road** | : | |
| **Blue Bell, PA 19422** | : | |
| | : | |
| **and** | : | |
| | : | |
| **T. RODERICK HENKELS** | : | |
| **Philadelphia, PA 19118** | : | |
| | : | |
| **Defendants.** | : | |

_____ :

## FIRST AMENDED COMPLAINT

### I.  INTRODUCTION

Plaintiff, Caroline Henrich, brings this action against her former employers: Henkels & McCoy, Inc.; Henkels & McCoy Group, Inc.; and H&M Shared Services, Inc. (collectively, "HM Defendants"), and T. Roderick Henkels ("Defendant Henkels"), a Philadelphia County resident, in his individual capacity as an aider and abettor of discrimination and retaliation.

An accomplished and seasoned attorney, Plaintiff served as Vice President and General Counsel for H&M Defendants.   After experiencing a hostile work environment and sex discrimination in the workplace – and observing other females employees enduring the same – Plaintiff raised complaints to Defendant Henkels and other executive-level members of H&M Defendants, a male-dominated entity that embraced a sex-discriminatory and retaliatory culture. Thereafter, Defendants retaliated against Plaintiff by subjecting her to further hostile conduct, including sex-discriminatory comments and conduct, and ultimately terminated her employment within days of her again complaining of the continuing harassment, discrimination, and retaliation that she faced.

Plaintiff was subjected to a hostile work environment and discriminated against because of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq*. ("PHRA").   Plaintiff was further retaliated against in violation of these statutes by being subjected to a retaliatory hostile work environment and having her employment terminated for complaining about sex discrimination and retaliation.   Plaintiff seeks all damages, including economic loss, compensatory, and punitive damages, and all other relief under applicable federal and state law as this Court deems appropriate.

## II.   <u>PARTIES</u>

1.   Plaintiff, Caroline Henrich, is a female individual and citizen of the Commonwealth of Pennsylvania.

2.   H&M Defendants are an infrastructure construction, design, and engineering contracting company with a principal place of business in Blue Bell, Pennsylvania. A nationwide contracting firm, H&M Defendants operate more than fifty (50) offices across the United States.

3.      H&M Defendants are engaged in an industry affecting interstate commerce and regularly conduct business in the Commonwealth of Pennsylvania.

4.      At all times material hereto, H&M Defendants employed more than fifteen (15) individuals.

5.      At all times material hereto, H&M Defendants have acted as "employers" within the meaning of the statutes which form the basis of this matter.

6.      At all times material hereto, Plaintiff was an "employee" of H&M Defendants within the meaning of the statutes which form the basis of this matter.

7.      At all times material hereto, H&M Defendants have had integrated operations, have had shared ownership, have had common management, and have had centralized control of their employment matters.

8.      At all times material hereto, H&M Defendants have acted as a single employer, joint employers, and/or alter egos.

9.      The operations of H&M Defendants are substantively consolidated.

10.     For example, all senior management employees of H&M Defendants share the same email handle (@henkels.com).

11.     Defendant T. Roderick Henkels serves H&M Defendants as Chairman, President, and Chief Executive Officer of Defendant Henkels & McCoy Group, Inc.

12.     Defendant Henkels has acted as an aider and abettor of discrimination and retaliation within the meaning of the PHRA.

13.     At all times material hereto, Defendants acted by and through their authorized agents, servants, and/or employees acting within the course and scope of their employment with H&M Defendants and in furtherance of H&M Defendants' businesses.

### III.   JURISDICTION AND VENUE

14.   The causes of action which form the basis of this matter arise under Title VII and the PHRA.

15.   The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

16.   The District Court has supplemental jurisdiction over Count II (PHRA) and Count III (PHRA) pursuant to 28 U.S.C. §1367.

17.   Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

18.   On or about July 3, 2019, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), and dual-filed with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination and retaliation alleged herein.  Attached hereto, incorporated herein and marked as Exhibit 1 is a true and correct copy of the Complaint of Discrimination.

19.   On or about September 16, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue.  Attached hereto, incorporated herein and marked as Exhibit 2 is a true and correct copy of that notice.

20.   Plaintiff filed a Complaint in the District Court for the Eastern District of Pennsylvania on December 14, 2020.  Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

### IV.   FACTUAL ALLEGATIONS

21.   Plaintiff is a licensed attorney admitted to practice law in the Commonwealth of Pennsylvania.

22.     Plaintiff obtained her undergraduate degree from the University of Michigan and her law degree from the University of Pittsburgh.  She also obtained an LLM in Environmental Law from Pace University School of Law.

23.     Plaintiff commenced employment with H&M Defendants in or around December 2014.

24.     Plaintiff's served as Vice President and General Counsel for H&M Defendants.

25.     Her job duties included managing and integrating best practices around contractual risk, managing all litigation, and ensuring regulatory compliance.

26.     In 2016, Plaintiff earned the GC Impact Award from *The Legal Intelligencer* in connection with her leadership as General Counsel of H&M Defendants.

27.     At the time of the termination of her employment in 2019, Plaintiff reported directly to J. Daniel Pigott, Jr. (male), who served H&M Defendants as Senior Vice President and Chief Administrative Officer of Defendant Henkels & McCoy Group, Inc. and President of Defendant H&M Shared Services, Inc.

28.     Mr. Pigott reported directly to Defendant T. Roderick Henkels (male).

29.     During Plaintiff's tenure, H&M Defendants had an underrepresentation of female employees, particularly female employees in high-ranking positions.

30.     By way of example, for the vast majority of Plaintiff's tenure with H&M Defendants, of the ten (10) members of H&M Defendants' Leadership Team, nine (9) individuals were male, with Plaintiff being the only female member.

31.     Out of the substantial number employees of H&M Defendants with the title of Vice President, Plaintiff was only one (1) of two (2) female individuals with that title.

32.     Plaintiff was further the only female member of H&M Defendants' Business

Integrity Committee.

33.     On or around October 6, 2016, Plaintiff complained of sex discrimination to Mr. Pigott and Michael Cox (male) – Chief Information Officer of Defendant H&M Shared Services, Inc.

34.     Plaintiff complained to Mr. Pigott and Mr. Cox that, in a recent meeting, male executive employees blatantly ignored the female employees present.  The three (3) female employees in attendance at the meeting were not permitted to speak, but the male employees did speak and dominated the conversation.

35.     Plaintiff engaged in protected activity by complaining of sex discrimination to Mr. Pigott and Mr. Cox on or around October 6, 2016.

36.     Natalie Moore (female), Director of Marketing, who was one (1) of the female employees present at the above-referenced meeting, also complained of sex discrimination at H&M Defendants.

37.     Plaintiff informed Mr. Pigott – who was Ms. Moore's direct supervisor – about Ms. Moore's complaint of sex discrimination.

38.     On or around July 12, 2017, H&M Defendants terminated Ms. Moore's employment.

39.     H&M Defendants' stated reason for terminating Ms. Moore's employment was "position elimination."  Ms. Moore's job duties and responsibilities were not eliminated, but rather they were assigned to an employee who did not complain of discrimination at H&M Defendants.

40.     After her termination, Ms. Moore complained that H&M Defendants terminated her employment because of her sex and/or her complaint of sex discrimination.

41.     Plaintiff made certain recommendations to H&M Defendants regarding this matter as Chairperson of the Business Integrity Committee and in accordance with H&M Defendants' Code of Conduct; however, Plaintiff's recommendations were rebuffed.

42.     Plaintiff told David Lamoreaux (male), Vice President of Human Resources ("HR") at Defendant Henkels & McCoy Group, Inc., that, if Ms. Moore filed suit against H&M Defendants and Plaintiff was deposed, she would testify honestly about Plaintiff's own complaint of sex discrimination.

43.     Shortly thereafter, in or around August 2017, Mr. Lamoreaux told Plaintiff to "stop with the girl power."

44.     Mr. Lamoreaux further stated to Plaintiff in this meeting that H&M Defendants may have to stop hiring or promoting women.

45.     Plaintiff was offended by Mr. Lamoreaux's comments, and she understood Mr. Lamoreaux's comments to be discriminatory based on her sex and retaliatory based on Plaintiff's previous complaint of sex discrimination.

46.     Plaintiff informed Mr. Pigott about Mr. Lamoreaux's discriminatory and offensive sex-based comments.

47.     However, H&M Defendants failed to take any remedial or preventative action following Plaintiff's sex discrimination complaints.

48.     On October 16, 2017, an African-American female employee complained to Defendant Henkels that she felt discriminated against in the workplace and retaliated against for raising her concerns.

49.     Plaintiff wrote to Mr. Pigott on October 18, 2017 that she too has been subjected to discrimination and retaliation.

50.     Plaintiff concluded her October 18, 2017 email to Mr. Pigott by stating that she, a senior female in the company, has been subjected to name-calling and bullying behavior, and that the retaliation must cease.

51.     Plaintiff engaged in protected activity by complaining of sex discrimination and retaliation in her October 18, 2017 email to Mr. Pigott.

52.     Mr. Pigott responded to Plaintiff by telling her to stop emailing him.

53.     Again, H&M Defendants failed to take any remedial or preventative action following Plaintiff's sex discrimination complaints.

54.     Following Plaintiff's complaints, Defendant Henkels informed Plaintiff that he removed her from her position as Chairperson of the Business Integrity Committee.

55.     Defendants removed Plaintiff from this role because of her sex and/or her complaints of discrimination and retaliation.

56.     On or around January 8, 2018, Plaintiff complained in writing to Defendant Henkels that she was being subjected to sex discrimination.

57.     As a result, Defendants hired attorney Andrea Kramer to conduct an investigation into Plaintiff's sex discrimination complaints.

58.     Plaintiff and Ms. Kramer met briefly on January 9, 2018.

59.     On January 10, 2018, Plaintiff sent an email to Ms. Kramer further describing the sex discrimination and retaliation she had faced in the workplace at H&M Defendants.

60.     Specifically, Plaintiff wrote to Ms. Kramer: "First I want to make clear that I believe several comments and actions towards me were discriminatory due to my gender and then there has been subsequent retaliation."

61.     Plaintiff further described various sex-based discriminatory comments she

received in the workplace, including Mr. Lamoreaux's comment regarding "girl power" and a castigation of females as "emotional."

62.     Plaintiff expressed to Ms. Kramer that she feared further retaliation for raising complaints, and that she wanted this discriminatory, retaliatory, and bullying behavior at H&M Defendants to cease.

63.     On January 31, 2018, Plaintiff complained to the members of H&M Defendants' Business Integrity Committee (Mr. Lamoreaux, Director of HR Herbert Jackson (male), and Vice President of Finance Joseph Paulits (male)) in writing about the culture of sex discrimination at H&M Defendants.

64.      Among other things, Plaintiff recounted her own allegations of sex discrimination in the workplace.  Plaintiff implored the group to analyze these issues to understand how the culture at H&M Defendants permitted such conduct.

65.     Also on January 31, 2018, Plaintiff wrote to Ms. Kramer regarding, among other things, her numerous allegations of sex discrimination. Plaintiff explained to Ms. Kramer that she felt her good-faith complaints were met with bullying behavior, intimidation, and retaliation.

66.     In or around February 2018 Defendant Henkels and Ms. Kramer met with Plaintiff to tell her dismissively that the investigation was concluded and there had been no adverse action taken against Plaintiff.

67.     On multiple occasions, Defendant Henkels and Mr. Lamoreaux indicated to Plaintiff that she should stop complaining if she wanted to remain employed by H&M Defendants.

68.     Plaintiff understood these comments to be discriminatory and retaliatory based on Plaintiff's complaints of sex discrimination.

69.     On or around September 10, 2018, in a meeting among Plaintiff, Defendant Henkels, and outside counsel (via telephone), Plaintiff raised an issue related to training for employees in accordance with her responsibilities as a Business Integrity Committee member.

70.     Defendant Henkels asked Plaintiff, in an angry and aggressive tone, if Plaintiff was done talking about this situation.  Defendant Henkels then handed Plaintiff a piece of paper and instructed Plaintiff to write, sign, and date a declaration that she was done speaking about this matter, and that Plaintiff was "of sound mind and body."

71.     Plaintiff had never seen Defendant Henkels treat or speak to a male employee in this inappropriate and aggressive way.

72.     After this meeting concluded, Plaintiff complained to Defendant Henkels about his treatment of her.

73.     Plaintiff also complained in writing to Mr. Jackson, recapping Defendant Henkels' conduct during the September 10, 2018 meeting, and stating that Defendant Henkels' actions towards Plaintiff constituted a continued hostile work environment and retaliation against Plaintiff for raising complaints of sex discrimination.

74.     On September 12, 2018, Plaintiff again complained to Mr. Lamoreaux and Mr. Jackson of HR about the culture of H&M Defendants that resulted in the sex discrimination and retaliation that she faced.

75.     Thereafter, Defendants again engaged Ms. Kramer to investigate Plaintiff's complaints of discrimination and retaliation.

76.     Prior to meeting with Ms. Kramer, Plaintiff was advised that Ms. Kramer would likely conclude that the situation at H&M Defendants was merely a "personality conflict." Plaintiff complained to Mr. Pigott that she believed that based on this comment, Ms. Kramer

would not be objective in her investigation.  Mr. Pigott disregarded Plaintiff's concerns.

77.     Plaintiff met with Ms. Kramer numerous times over the next several weeks and further complained of sex discrimination and retaliation at H&M Defendants.

78.     On October 23, 2018, Ms. Kramer informed Plaintiff that she had completed her written report on her findings from her investigation, which she submitted to H&M Defendants. Ms. Kramer stated to Plaintiff her conclusion that she "found no offensive gender-based comments or conduct," "no adverse action" against Plaintiff, and "no gender-biased Company culture."

79.     Plaintiff wrote to Ms. Kramer, among other things, that she disagreed with Ms. Kramer's findings.

80.     In or around December 2018, in a meeting with Defendant Henkels and Mr. Pigott, Plaintiff received her annual performance review for 2018.  Defendant Henkels scored Plaintiff a 2.8 out of five (5), and Mr. Pigott scored Plaintiff a three (3) out of five (5) overall rating. These marks were the lowest scores that Plaintiff had ever received on a performance evaluation during her tenure with H&M Defendants.

81.     In the 2018 review, Defendant Henkels commented that "people do not trust what you are saying."

82.     After Plaintiff complained of sex discrimination and retaliation to and about Defendant Henkels, she began receiving lower performance evaluations scores.

83.     For example, for 2015, Plaintiff received an overall score of 3.9 out of five (5) from H&M Defendants.   In the evaluation, Defendant Henkels commented that Plaintiff had done an "excellent job" – especially compared to her predecessor – and that her "can do" attitude was refreshing and appreciated by the executive team.  Defendant Henkels further remarked that

Plaintiff had embraced, and was far along, the High Performance Team ("HPT") scale, which was a set of tools and techniques for process improvement utilized by H&M Defendants.

84.    In 2016, Plaintiff received an overall score of four (4) out of five (5).  In addition to numerous laudatory comments about Plaintiff's work performance, Mr. Pigott remarked that Plaintiff was "an important part of the team and a pleasure to work with."

85.    In 2017, after Plaintiff complained in connection with Ms. Moore's termination, Plaintiff received an overall score of 3.5 out of (5).  H&M Defendants also scored Plaintiff with a two (2) out of five (5) for her leadership skills.

86.    Plaintiff responded to Defendant Henkels and Mr. Pigott in writing regarding her 2018 performance evaluation, referencing her prior complaints of sex discrimination and retaliation and requesting that she be held to the same standards as her male comparators. Plaintiff further stated that she should not be retaliated against for her sex discrimination complaints.

87.    Plaintiff also complained to Mr. Jackson and Mr. Lamoreaux regarding her 2018 performance evaluation, advising them in writing that she believed she was being "subjected to different treatment due to gender and having made a complaint."

88.    Mr. Lamoreaux responded by discouraging Plaintiff from filing another internal complaint of discrimination and retaliation, as that action would be contrary to the "reset" he believed would be happening between Plaintiff and H&M Defendants.

89.    In February 2019, Plaintiff raised a concern with Mr. Pigott that she was being required to make certain field visits that her male colleagues were not required to make.  Plaintiff wrote to Mr. Pigott on February 18, 2019: "As the only female executive in HMG and having recently made complaints regarding gender, I am extremely uncomfortable with the differing

treatment that was clear in my review and moving forward thereafter."

90.     In response, on February 27, 2019, Mr. Pigott wrote to Plaintiff: "I take exception to your continuing insinuations that I treat personnel differently based on gender or any other basis."

91.     On or around May 10, 2019, after Mr. Pigott provided false and unwarranted criticism regarding the legal department budget, Plaintiff again complained of sex discrimination and retaliation, including being subjected to a hostile work environment because of her sex and her complaints of sex discrimination.

92.     Only days later, on May 16, 2019, in a meeting with Defendant Henkels and Mr. Lamoreaux, Plaintiff was notified that H&M Defendants were terminating her employment as General Counsel and Vice President.

93.     The stated reason for Plaintiff's termination was that her personal values conflicted with her position at H&M Defendants.

94.     Defendants' stated reason for Plaintiff's termination is false and pretext for sex discrimination and/or retaliation.

95.     Upon information and belief, Defendants assigned Plaintiff's job duties to male and non-complaining employees.  Plaintiff was more qualified and experienced to perform her position than the male and non-complaining employees who have been assigned her job duties.

96.     Plaintiff's sex was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, in the creation of the hostile work environment to which Plaintiff was subjected, and in the termination of Plaintiff's employment.

97.     Plaintiff's complaining of discrimination and a hostile work environment was a motivating and/or determinative factor in Defendants' retaliatory treatment of Plaintiff, in the

creation of a retaliatory hostile work environment to which Plaintiff was subjected, and in the termination of Plaintiff's employment.

98.     Defendants failed to prevent or address the harassing, discriminatory, and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of harassing, discriminatory, and retaliatory conduct.

99.     The conduct of Defendants, as set forth above, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment are altered and the working environment is hostile or abusive.

100.    The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

101.    As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

102.    The conduct of Defendants, as set forth above, was outrageous under the circumstances, was done by and with the knowledge of upper management and warrants the imposition of punitive damages against Defendants.

103.    The conduct of Defendants, as set forth above, was willful and intentional.

## COUNT I (TITLE VII) AS TO H&M DEFENDANTS

104.    Plaintiff incorporates herein by reference paragraphs 1 through 103 above, as if set forth herein in their entirety.

105.    By committing the foregoing acts of harassment, discrimination and retaliation against Plaintiff on the basis of Plaintiff's sex, H&M Defendants have violated Title VII.

106.    Said violations were willful and intentional and warrant the imposition of punitive damages.

107.    As a direct and proximate result of H&M Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein.

108.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of H&M Defendants' unlawful acts unless and until this Court grants the relief requested herein.

109.    No previous application has been made for the relief requested herein.

## COUNT II (PHRA) AS TO H&M DEFENDANTS

110.    Plaintiff incorporates herein by reference paragraphs 1 through 109 above, as if set forth herein in their entirety.

111.    H&M Defendants, by committing the foregoing acts of harassment, discrimination, and retaliation, have violated the PHRA.

112.    As a direct and proximate result of H&M Defendants' violations of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein.

113.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of H&M Defendants' unlawful acts unless and until the Court grants the relief requested herein.

114.    No previous application has been made for the relief requested herein.

**COUNT III (PHRA) AS TO DEFENDANT HENKELS**

115.    Plaintiff incorporates herein by reference paragraphs 1 through 114 above, as if set forth herein in their entirety.

116.    Defendant Henkels aided and abetted H&M Defendants' discrimination and retaliation against Plaintiff by subjecting her to a hostile work environment and ultimately terminating Plaintiff's employment.

117.    Defendant Henkels, by committing the foregoing acts of harassment, discrimination, and retaliation, has violated the PHRA.

118.    As a direct and proximate result of Defendant Henkels' violations of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein.

119.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant Henkels' unlawful acts unless and until the Court grants the relief requested herein.

120.    No previous application has been made for the relief requested herein.

**RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Caroline Henrich, and against H&M Defendants and Defendant Henkels.  Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

a)  declaring the acts and practices complained of herein to be in violation of Title VII;

b)  declaring the acts and practices complained of herein to be in violation of the PHRA;

c)  enjoining and permanently restraining the violations alleged herein;

d)  entering judgment against Defendants in favor of Plaintiff in an amount to be determined;

e)  awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits and earnings capacity which Plaintiff has suffered and will continue to suffer as a result of Defendants' discriminatory and unlawful misconduct;

f)  awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures and pain and suffering, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

g)  awarding punitive damages to Plaintiff under Title VII;

h)  awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA;

i)  awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

j)  granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: January 11, 2021                By:   _____

Rahul Munshi
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
munshi@consolelaw.com
215-545-7676
215-814-8920 (fax)

Attorneys for Plaintiff,
Caroline Henrich

# Exhibit 1

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION

|  |  |
|---|---|
| | : |
| Caroline Henrich, | : |
| Complainant | : |
| | : |
| v. | : PHRC Case No. 201904485 |
| | : |
| Henkels & McCoy, Inc.; H&M Shared | : EEOC No. 17F202061504 |
| Services, Inc.; Henkels & McCoy Group, | |
| Inc., | |
| Respondent | : |
| | : |

## COMPLAINT

## JURISDICTION

1.   Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

## PARTIES

2.   The Complainant herein is:

Caroline Henrich

Avondale, PA 19311

3.   The Respondent herein is:

Henkels & McCoy, Inc.
985 Jolly Road
Blue Bell, PA 19422

H&M Shared Services, Inc.
985 Jolly Road
Blue Bell, PA 19422

Henkels & McCoy Group, Inc.
985 Jolly Road
Blue Bell, PA 19422

Received

JUL 3   2019

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:                                    :

**CAROLINE HENRICH**                            :          Docket No. 201904485

v.                                              :

RESPONDENTS:                                    :

**HENKELS & MCCOY, INC.**                       :

and                                             :

**H&M SHARED SERVICES, INC.**                   :

and                                             :

**HENKELS & MCCOY GROUP, INC.**                 :

and                                             :

**T. RODERICK HENKELS, aider and abettor**      :

1. The Complainant herein is:

    Name:        Caroline Henrich

    Address:     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
                 Avondale, PA 19311

2. The Respondents herein are:

    Names:       Henkels & McCoy, Inc.; H&M Shared Services, Inc.; Henkels & McCoy
                 Group, Inc.; (collectively, "Respondent Entities"); T. Roderick Henkels,
                 aider and abettor ("Respondent Henkels")

    Address:     985 Jolly Road
                 Blue Bell, PA 19422

3. I, Caroline Henrich, the Complainant herein, allege that I was subjected to unlawful discrimination because of my sex (female) and retaliation because of my complaints of sex discrimination, as set forth below:

### Discrimination and Retaliation

#### A. I specifically allege:

[1]    I began working at Respondent Entities in or about December 2014.

[2]    I consistently perform my job duties in a highly competent manner.

[3]    I last held the position of Vice President and General Counsel.

[4]    I last reported to J. Daniel Pigott, Jr. (male), Senior Vice President and Chief Administrative Officer. Pigott reported to Respondent T. Roderick Henkels (male), Chairman, President, and Chief Executive Officer.

[5]    Out of the ten (10) members of Respondent Entities' Leadership Team, there were nine (9) males, and I was the only female.

[6]    There are currently no females on Respondent Entities' Leadership Team.

[7]    Out of the substantial number of Vice Presidents employees at Respondent Entities, I was one (1) of only two (2) female Vice President employees.

[8]    I was the only female member of Respondent Entities' Business Integrity Committee.

[9]    Respondent Entities have an underrepresentation of female employees, particularly female employees in higher-ranking positions.

[10]    Respondents Entities treated me differently, and in a more hostile and dismissive manner, than they treated male and/or noncomplaining employees.

[11]    Respondent Entities called women, including me, "emotional."

[12]     Respondent Entities instructed me to "stop with the girl power."

[13]     Female employees referred to Respondent Entities as "an old boys club."

[14]     Male employees stated that female employees were trying to "play the victim" when they complained of sex discrimination.

[15]     I was told that I was "catastrophizing" by complaining of sex discrimination and retaliation.

[16]     On or about October 6, 2016, I complained to Pigott of sex discrimination. I complained that, in a recent meeting, male executive employees ignored female employees. The three (3) female employees present at the meeting were not permitted to speak, but the male employees were permitted to speak.

[17]     I was aware that Natalie Moore (female), Director of Marketing, one (1) of the female employees in the above meeting, also complained of sex discrimination at Respondent Entities.

[18]     On July 12, 2017, Respondent Entities terminated Moore's employment. The stated reason was position elimination.

[19]     Moore's job duties and responsibilities were assigned to a noncomplaining employee.

[20]     Moore complained that Respondent Entities terminated her employment because of her sex and sex discrimination complaints.

[21]     I urged Respondent Entities to conduct an analysis to determine whether Moore was terminated because of her sex or sex discrimination complaints.

[22]     I told David Lamoreaux (male), Vice President of Human Resources, that, if Moore filed suit against Respondent Entities and I was deposed, I would testify honestly about my sex discrimination complaint.

[23]     In or about August 2017, in a meeting with Lamoreaux, he told me to "stop with the girl power." He stated that Respondent Entities may have to stop hiring or promoting women. I was offended by these comments, and understood these comments to be discriminatory based on my sex and retaliatory based on my complaints of sex discrimination.

[24]     On October 18, 2017, in an email to Pigott, I complained of sex discrimination. I stated that employees need to be encouraged to come forward without fear of retaliation and, as the senior female employee at Respondent Entities, I was concerned for other female employees. Pigott instructed me to stop emailing him.

[25]     Respondent Entities failed to take any remedial or preventative action following my sex discrimination complaints.

[26]     Respondent Entities failed to investigate my sex discrimination complaints.

[27]     Following my complaints, in a meeting with Respondent Henkels, I was informed that I would be removed as Chairperson of the Business Integrity Committee.

[28]     Respondents removed me as Chairperson of the Business Integrity Committee because of my sex and/or my sex discrimination and retaliation complaints.

[29]     On January 8, 2018, in an email to Respondent Henkels, I complained of sex discrimination.

[30]     Respondent Entities hired Andrea Kramer (female) to investigate my sex discrimination complaints.

[31]     I met with and sent emails to Kramer numerous times over the next several weeks and complained of sex discrimination and retaliation.

[32]     On January 31, 2018, in emails to Kramer, Lamoreaux, Herbert Jackson (male), Human Resources, and Joseph Paulits (male), Vice President of Finance, I complained of a culture of sex discrimination at Respondent.

[33]     In or about February 2018, in a meeting with Respondent Henkels and Kramer, I was told that there was no adverse action taken against me.

[34]     On multiple occasions, I understood that Respondent Henkels and Lamoreaux were indicating to me that I should stop complaining if I wanted to remain employed at Respondent Entities. I understood this comment to be discriminatory based on my sex and retaliatory based on my complaints of sex discrimination.

[35]     On or about September 10, 2018, in a meeting with Respondent Henkels, and Michael Ossip, outside counsel, on the phone, I raised Moore's termination and her complaints of sex discrimination and retaliation. Respondent Henkels asked me, in an angry tone, if I was done talking about the Natalie Moore situation. He then handed me a piece of paper and instructed me to write that I was done with the Moore matter and that I was "of sound mind and body," and to sign and date it. I never heard Respondent Henkels treat or speak to a male employee in the same way.

[36]     Following the above meeting, I complained to Respondent Henkels and Jackson, that I was being discriminated against because of my sex and retaliated against because of my sex discrimination complaints. I complained that male employees made hiring decisions for the employees who report to me, that female employees are treated worse than male employees, that I was instructed by Respondent Henkels, on September 10, 2018, during a

meeting that involved discussing Moore, to write that I was done with the Moore matter and that I was "of sound mind and body," and to sign and date it.

[37]      Respondent Entities again hired Kramer to investigate my sex discrimination complaints.

[38]      I met with Kramer numerous times over the next several weeks and complained of sex discrimination and retaliation.

[39]      On October 23, 2018, in a meeting with Kramer and Pigott, and in a follow-up email from Kramer, I was told by that she "found no offensive gender-based comments or conduct, no disparate treatment regarding the PIP's, no adverse employment action against [me], and no gender-biased Company culture."

[40]      Respondent Entities failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[41]      On multiple occasions, I complained that I would not tolerate being treated worse than male employees and that I believed that I was being discriminated against because of my sex and retaliated against because of my sex discrimination complaints.

[42]      Respondent Entities failed to take any remedial or preventative action following my complaints of sex discrimination.

[43]      Female employees repeatedly complained to me of sex discrimination, including that female employees were treated worse than male employees

[44]      In or about December 2018, in a meeting with Respondent Henkels and Pigott, I received a three (3) out of five (5) overall rating on my performance review. My performance warranted a higher performance review. Before I complained of sex discrimination, I had received higher performance reviews. This was the lowest overall score I had received. I

responded to this lower performance review in writing, referencing my prior complaints of sex discrimination and retaliation and requesting to be held to the same standard as my male comparators and not to be retaliated against for my sex discrimination on complaints.

[45]     Respondent Entities failed to take any remedial or preventative action following my complaints of sex discrimination and retaliation.

[46]     On or about May 10, 2019, I complained of sex discrimination and retaliation, including being subjected to a hostile work environment because of my sex and my complaints of sex discrimination.

[47]     Respondent Entities failed to take any remedial or preventative action following my complaints of sex discrimination and retaliation.

[48]     Respondent Entities failed to investigate my complaints of sex discrimination and retaliation.

[49]     On May 16, 2019, in a meeting with Respondent Henkels and Lamoreaux, I was notified that Respondent Entities were terminating my employment. The stated reason was that my personal values conflicted with my position at Respondent Entities. I was blindsided.

[50]     Respondents' stated reason for my termination is false and pretext and/or a statement made because of my sex and/or my complaints of sex discrimination.

[51]     Respondents terminated my employment because of my sex and/or my complaints of sex discrimination.

[52]     Respondents failed to take any remedial or preventative action following my complaints of sex discrimination.

[53]     Respondents did not provide me with an opportunity to remedy any allegedly deficient performance or procedures before notifying me that they were terminating my employment.

[54]     Respondents provided me with no opportunity to remain employed with Respondent Entities.

[55]     I had no disciplinary or performance issues throughout my employment with Respondent Entities.

[56]     I was the only employee notified of termination on May 16, 2019.

[57]     Respondents have assigned my job duties to noncomplaining employees. I was more qualified and experienced to perform my position than the noncomplaining employees who have been assigned my job duties.

[58]     Respondents failed to take any action to remedy or prevent the sex discrimination and/or retaliation against me.

[59]     Respondents' comments and conduct evidence a bias against female employees and employees who engage in protected activity.

[60]     Respondents' conduct toward me has caused me emotional distress.

B.  Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female) and retaliated against because of my complaints of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

___X___     **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L.**

**744, as amended) Section 5 Subsection(s): __(a); (d); (e)__**

_____     Section 5.1 Subsection(s) _____

_____     Section 5.2 Subsection(s) _____

_____     Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

___X___     **This charge will be referred to the EEOC for the purpose of dual**

**filing.**

6.    The Complainant prays that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and

procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation

complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.


7/3/19
(Date Signed)


_Caroline Henrich_
(Signature)    Caroline Henrich

Avondale, PA 19311

# Exhibit 2

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Caroline Henrich** <br><br> ▉▉▉▉▉▉▉▉▉▉▉ <br> **Avondale, PA 19311** | From:  **Philadelphia District Office** <br> **801 Market Street** <br> **Suite 1000** <br> **Philadelphia, PA 19107** |

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2020-61504** | **Kurt Jung,** <br> **State, Local and Tribal Program Manager** | **(267) 589-9749** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** __WITHIN 90 DAYS__ **of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court** __WITHIN 90 DAYS__ **of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred** __more than 2 years (3 years)__ **before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williamson*                                        9/16/2020

_____                    _____

Enclosures(s)                           **Jamie R. Williamson,**              *(Date Mailed)*
                                        **District Director**

cc:     **Caroline Henrich**

        **Rahul Munshi Esq.**
        **(Charging Party Attorney)**

        **Henkels & McCoy, Inc.; H&M Shared Services**
        **Human Resources Manager**