## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CAROLINE HENRICH** <br><br> v. <br><br> **HENKELS & MCCOY, INC. et al.** | **CIVIL ACTION** <br><br> NO. 20-6281 |

### MEMORANDUM RE: DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**Baylson, J.**                                                                 **August 26, 2022**

### I.   Introduction

Defendants Henkels & McCoy, Inc.; Henkels & McCoy Group, Inc.; H&M Shared Services, Inc.; and T. Roderick Henkels have filed a Motion for Partial Summary Judgment (ECF 27) in this case arising from alleged employment discrimination. Plaintiff Caroline Henrich has brought state and federal claims against Defendants alleging that they discriminated against her on the basis of her gender, ultimately terminating her employment as retaliation for speaking up about this issue. Defendants seek summary judgment specifically on the issue of whether Plaintiff was subjected to a hostile work environment.

### II.  Background and Procedural History

The facts of this case, considered in the light most favorable to the nonmoving party, are as follows. Defendants Henkels & McCoy, Inc. and H&M Shared Services, Inc., are direct subsidiaries of Defendant Henkels & McCoy Group, Inc. (collectively "H&M Defendants), an engineering and construction company. Defendant T. Roderick Henkels is the chairman, president, and chief executive officer of Henkels & McCoy Group. Plaintiff Caroline Henrich is a former employee of Henkels & McCoy Group who served as vice president and general counsel. (MSJ Resp., Additional Statement of Material Facts ¶¶ 1–15.)

1

Henrich contends that during her time at Henkels & McCoy Group, the leadership of which was numerically dominated by men, she was subjected to discriminatory treatment on the basis of her gender. (Id. ¶¶ 18–24.) In or around November 2016, Henrich complained to coworkers that at a meeting run by Vice President Michael Cox, only men were called upon to give updates, and women were bypassed. Another woman at the meeting, Natalie Moore, also complained to Henrich that she was passed over because of her gender. (Id. ¶¶ 37–38.)

Several months after she complained to Henrich, Henkels & McCoy Group terminated Moore's employment. Henrich met with Vice President of Human Resources David Lamoreaux regarding the matter in fall 2017. Lamoreaux urged Henrich to stop discussing the complaint she and Moore had voiced about the November 2016 meeting, telling Henrich to "stop it with the girl power" or words to that effect. (Id. ¶¶ 39–43.) Around the same time as this meeting, Henrich wrote to her direct supervisor, Senior Vice President and Chief Administrative Officer J. Daniel Pigott, that she had been subjected to name-calling and bullying. (Id. ¶¶ 50–52.) Shortly after these events, CEO Henkels removed Henrich from her position as chairperson of the company's Business Integrity Committee, of which she was the sole female member. (Id. ¶¶ 52–57.)

In January 2018, Henrich told Henkels that she had experienced gender discrimination at Henkel & McCoy Group. Henkels responded by hiring an outside counsel, Andrea Kramer, to investigate Henrich's allegations. (Id. ¶¶ 33–36.) Over the course of 2018, Henrich received what she regarded as disrespectful treatment from subordinates and coworkers, which she perceived as different than how those subordinates and coworkers treated male executives. Henrich believed this treatment was at least partly in response to her complaints regarding gender discrimination. (Id. ¶¶ 58–65.)

Henrich and Henkels met in September 2018. They discussed, among other matters, Kramer's investigation into gender discrimination in the company. Henkels grew angry with Henrich regarding Natalie Moore's termination, demanding that Henrich write on a paper that she was "done with Natalie Moore" and was "of sound mind and body." Henrich filed a complaint with human resources over the incident. (Id. ¶¶ 66–71.)

Following the filing of this complaint, and based on Henkels's view that Henrich believed "all the men were discriminating against her," Henrich and the company entered into a "reset" intended to "rebuild trust." (Id. ¶¶ 77–80.) However, Henrich continued to receive what she perceived as discriminatory treatment. In or around December 2018, on a year-end performance review, Henkels gave Henrich the lowest marks she had ever received during her time with the company. (Id. ¶¶ 81–82.) In February 2019, Henrich expressed concern to Pigott that she was required to make certain field visits that her male colleagues were not. (Id. ¶¶ 83–85.) Henrich raised both these incidents with human resources. Lamoreaux, however, successfully discouraged her from filing a formal complaint, telling Henrich that doing so would be contrary to the "reset." (Id. ¶¶ 86–89.)

In or around May 2019, Pigott gave Henrich a mid-year performance review in which he chastised her for going $18,000 over budget in her department. Upon further examination, Henrich learned that other departments, headed by male executives, had gone over budget by greater amounts—and that, furthermore, her department's alleged over-budget spending was actually an accounting error. Believing that she was being treated in a discriminatory manner—chastised for alleged over-budget spending that male department heads engaged in to an even greater degree—Henrich filed an official complaint with human resources. (Id. ¶¶ 90–96.) Within forty-eight hours of learning that Henrich had filed this complaint, Henkels terminated her employment. Henkels

informed Henrich that her "personal values" were not aligned with Henkels & McCoy Group. (Id. ¶¶ 97–107.)

Plaintiff brought suit against Defendants, alleging that her treatment constituted unlawful gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. Henrich contends that she was subjected to a hostile work environment and that her termination was retaliatory. In her Complaint (ECF 1), Plaintiff brings the following claims:

1. **Count I**: Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., by H&M Defendants;

2. **Count II**: Violation of the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, et seq., by H&M Defendants; and

3. **Count III**: Violation of the PHRA by Henkels.

Defendants now seek partial summary judgment on the question of whether Henrich was subjected to a hostile work environment. Although Defendants also deny that Henrich's termination was retaliatory, they do not seek summary judgment on that particular issue. Plaintiff filed a Response (ECF 29), and Defendants filed a Reply (ECF 30).

### III. Legal Standard

Summary judgment should be granted if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a factual dispute "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. A grant of summary

judgment is appropriate only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In deciding a motion for summary judgment, courts are obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015). The moving party must inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's burden at the summary judgment stage can be met by simply pointing out to the court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—that demonstrate the existence of a genuine triable dispute. Fed. R. Civ. P. 56(c).

IV. Discussion

    a. Title VII

        i. Applicable Law

Title VII of the Civil Rights Act of 1964 provides in relevant part that it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2. One way in which a plaintiff "may establish a violation of Title VII [is] by proving that discrimination based on sex has created a hostile or abusive work

environment." Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 328 (3d Cir. 2015) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986)).

A plaintiff bringing a hostile work environment claim "must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013). Because "[i]t has become easier to coat various forms of discrimination with the appearance of propriety," courts "must be increasingly vigilant in their efforts to ensure that prohibited discrimination is not approved under the auspices of legitimate conduct, and 'a plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled . . . because of crabbed notions of relevance or excessive mistrust of juries.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1082 (3d Cir. 1996) (citation omitted).

### ii. Analysis

Defendants argue that no reasonable jury could find that Henrich was subjected to severe or pervasive discrimination because of her gender. (MSJ Br. 11–15.) Defendants also argue that no reasonable jury could find that the alleged discrimination detrimentally affected Henrich or would have detrimentally affected a reasonable person in Henrich's circumstances. (Id. at 15–18.)

### 1. Response to Complaints of Gender Discrimination

The Court finds that Plaintiff has presented sufficient evidence for a reasonable jury to find that she was subjected to, and detrimentally affected by, severe or pervasive discrimination because of her gender. The "girl power" remark by Lamoreaux, which Defendants do not dispute occurred, can hardly be characterized as a mere stray comment or off-color joke; this statement,

which a reasonable jury may well find demeaning in a very gender-specific way, was made by the company's head of human resources and in the context of discouraging Henrich from continuing to raise the issue of Natalie Moore's gender discrimination complaint. Moreover, there is deposition testimony and other evidence that the "girl power" remark was followed by the suggestion that the company would stop hiring women entirely should "women [keep] causing problems." (MSJ Resp., Ex. 3, Henrich Dep. at 143; Ex. 8, Kramer Rep. at 7.)

Lamoreaux, who Defendants do not dispute repeatedly discouraged Henrich from filing complaints regarding gender discrimination, was not alone in his attitude. It is undisputed that no less than the head of the company, Henkels, demanded that Henrich sign a quasi-legal document stating that she was "done" discussing the alleged gender discrimination experienced by Moore. After the "reset," there is evidence that Henrich was effectively forbidden from discussing any existence of gender discrimination within the company. (MSJ Resp., Ex. 5, Odum Dep. at 116.) Plaintiff has testified that she would have been fired had she not agreed to this "reset," (MSJ Resp., Ex. 3, Henrich Dep. at 209), and indeed she was fired within forty-eight hours of filing a later complaint regarding gender discrimination. Henkels has testified that Henrich "couldn't see beyond that lens of discrimination," (MSJ Resp., ASMF ¶ 104), leading him to fire her because she "couldn't look at things openly and objective." (MSJ Resp., Ex. 2, Henkels Dep. at 325.) This supports a reasonable jury finding that the firing was in response to Henrich's repeated complaints of gender discrimination. Lamoreaux's deposition testimony—that "anybody who complains over and over again is eventually not going to be somebody that people want to work with"—supports this interpretation as well. (MSJ Resp., ASMF ¶ 107.)

Though Defendants attempt to draw a clear line between the issue of whether Henrich was subjected to a retaliatory termination and the issue of whether Henrich was subjected to a hostile

work environment, the two cannot be separated so cleanly. Plaintiff has presented substantial evidence that in response to complaints about gender discrimination allegedly experienced by her and other female employees, high-level company officials repeatedly threatened her continued employment and ultimately followed through on that threat. A reasonable jury may well find that such treatment would "unreasonably interfere[] with an employee's work performance" and have a negative "effect on the employee's psychological well-being," both of which are relevant factors to determining whether a work environment was hostile. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

### 2. Other Hostile Behavior

Threatening Henrich's employment in an attempt to prevent her from speaking about gender discrimination is not the only hostile behavior of which Plaintiff has presented evidence. To note a few, Plaintiff has presented undisputed deposition testimony that she attended a meeting in 2016 at which all the men present were called upon and none of the women. (MSJ Resp., Ex. 3, Henrich Dep. at 123.) Plaintiff has also presented deposition testimony that she was held to certain standards regarding department spending (id. at 225–63, 233) and mandatory field visits (id. at 243–46 ) that she believes her male colleagues were not. Finally, Plaintiff has presented deposition testimony that she was removed from her position as chairperson of the company's Business Integrity Committee, of which she was the sole female member, shortly after she complained about gender discrimination in October 2017.[1] (MSJ Resp., Ex. 2, Henkels Dep. at 137, 163–64, 169–70.)

---

[1] Though Defendants contend that this final incident is time-barred (MSJ Br. 9), "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002).

Each of these episodes—the concrete facts of which Defendants do not dispute, though they assert that they were not related to Henrich's gender—may not in and of themselves give rise to a reasonable inference of gender discrimination.  However, "[a] hostile work environment claim 'is composed of a series of separate acts that collectively constitute one "unlawful employment practice"' and 'cannot be said to occur on any particular day.'"  Mandel, 706 F.3d at 165 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 103 (2002)).  Viewed in concert with the serious punishments Henrich received directly in response speaking about gender discrimination, a reasonable jury might find that these additional incidents were also linked to her gender.

The Court concludes that Plaintiff has presented sufficient evidence for a reasonable jury to infer that she was subjected to severe or pervasive gender discrimination that gave rise to a hostile work environment in violation of Title VII.  The Court will therefore deny summary judgment on this issue.  See Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996) ("Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." (quoting Nathanson v. Med. Coll. of Pennsylvania, 926 F.2d 1368, 1380 (3d Cir. 1991))).

    **b. PHRA**

"[T]he PHRA is to be interpreted as identical to federal antidiscrimination laws except where there is something specifically different in its language requiring that it be treated differently."  Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002).  Neither party contends that Plaintiff's PHRA claims should be treated differently than Plaintiff's Title VII claim.  Accordingly, for the same reasons discussed with regard to Plaintiff's Title VII claim, the Court will deny summary judgment as to whether Plaintiff was subjected to a discriminatory and hostile work environment in violation of the PHRA.

## V. Conclusion

For the foregoing reasons, the Court will deny Defendants' Motion. An appropriate Order follows.

O:\CIVIL 20\20-6281 Henrich v Henkels & McCoy\20cv6281 Memorandum re MSJ.docx